**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GARY JOHNSON,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 2:24-cv-01591-KSM** |
| **AMERICAN RECOVERY SERVICE and INTERNATIONAL RECOVERY SYSTEMS, INC.,** | |
| Defendants. | |

<u>**MEMORANDUM**</u>

Marston, J.                                                        December 18, 2024

*Pro se* Plaintiff Gary Johnson brings claims against Defendants American Recovery Service ("ARS") and International Recovery Systems, Inc. ("IRS") for violations of the Federal Fair Debt Collection Practices Act (the "FDCPA") and for state law torts of conversion and civil conspiracy. (Doc. No. 18.) Defendants have moved to dismiss Johnson's second amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 19.)[1] For the reasons discussed below, Defendants' motion is granted, and Plaintiff's claims are dismissed with prejudice.

---

[1] Defendants also move for dismissal pursuant to Rule 12(b)(4) (*see id.* at 8), which authorizes dismissal for "insufficient process," Fed. R. Civ. P. 12(b)(4). Because dismissal is appropriate under Rule 12(b)(6), the Court need not address this alternative argument.

I.    **BACKGROUND**[2]

This is a vehicle repossession dispute.  On May 28, 2021, Johnson financed a 2019 Jaguar F-Pace through a retail installment sale contract[3] with the Jaguar dealership.  (Doc. No. 18 at 2, 31–35.)  The dealership assigned this installment contract to nonparty Bank of America. (*Id.* at 4.)  Bank of America later attempted to "collect a debt" from Johnson, notifying him that he was "in default" under the installment contract.  (*Id.* at 6, 9.)  On December 14, 2022, when Johnson failed to cure the default, Bank of America issued a repossession order to ARS, who in turn, assigned the task of physically repossessing the Jaguar to IRS.  (*Id.* at 6–8.)  IRS successfully repossessed the vehicle and held it in its private lot until Bank of America sold it to a third party in August 2023.  (*Id.* at 8–9.)

Before the vehicle was sold, Johnson submitted a complaint against "ARS and IRS to the Consumer Financial Protection Bureau and Attorney General of Pennsylvania."  (*Id*. at 8.) Johnson argued that Defendants' repossession was unlawful because Bank of America did "not have an enforceable security interest in the motor vehicle . . . ."  (*Id*. at 8, 15–23.)  Defendants responded to his complaint, asserting that the Jaguar "was the subject of a lawful repossession order from Bank of America," and that Johnson should direct his concerns "to Bank of America and/or the dealership where he purchased the vehicle."  (*Id.* at 23.)

On April 15, 2024, Johnson filed this action against ARS and IRS under the FDCPA and Pennsylvania law (Doc. No. 1), and one month later, he filed an amended complaint (Doc. No. 8).  On October 4, 2024, the Court dismissed the amended complaint with leave to amend (Doc.

---

[2] The second amended complaint is rambling and at times, difficult to follow.  Nevertheless, the Court takes Johnson's allegations as true for purposes of this motion.

[3] Although Johnson refers to the contract as a "Consumer Credit Contract" in his second amended complaint (*see* Doc. No. 18 at 2), the Court refers to the agreement using the title that appears in the contract papers:  "Retail Installment Sale Contract" (*see id.* at 31).

Nos. 16, 17), and Johnson filed a second amended complaint on October 18, 2024 (Doc. No. 18). The second amended complaint reiterates the allegations Johnson made in his prior pleadings. (*See generally* Doc. No. 18.)  Once again, Johnson claims that Defendants' repossession of the Jaguar violated § 1692f(6)(A) of the FDCPA because Bank of America did not have an enforceable security interest in the vehicle when it was repossessed.  (*Id.* at 9–11.)  Johnson also reasons that Defendants' cooperation in executing the repossession gives rise to actionable state law claims for civil conspiracy and conversion.  (*Id.* at 11–13.)  Defendants move to dismiss Johnson's claims under Federal Rule of Civil Procedure 12(b)(6), arguing that Johnson's claims are not plausible because he has not alleged facts tending to show that Bank of America lacked an enforceable security interest in the Jaguar.  (Doc. No. 19.)

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Facial plausibility" is when a plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This "plausibility standard" is not the same as a "'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Although a plaintiff does not need to include "detailed factual allegations" to survive a Rule 12(b)(6) motion, the plaintiff must "provide the grounds of his entitlement to relief" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (explaining that the court

"must accept the allegations in the complaint as true, but [is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation" (quotation marks omitted)).  In other words, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are not entitled to an assumption of truth."  *Ashcroft*, 556 U.S. at 678.  Instead, the operative complaint must contain *factual allegations* that "raise a right to relief above the speculative level."  *Bell*, 550 U.S. at 555; *see also Ashcroft*, 556 U.S. at 678 (explaining that if "well-pleaded factual allegations" remain after the court has disregarded conclusory statements, the court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "must accept the allegations in the complaint as true."  *Castleberry*, 863 F.3d at 263 (quotation marks omitted).  The court "may also consider documents attached to the complaint," *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011), along with "matters of public record, orders, . . . and items appearing in the record of the case," *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (quotation marks omitted).

## III.    ANALYSIS

Because Johnson's FDCPA claim serves as the basis for this Court's subject matter jurisdiction, *see* 28 U.S.C. § 1331,[4] we begin by analyzing whether Johnson's second amended complaint alleges a plausible violation of the statute.

---

[4] Because Johnson and IRS are both citizens of Pennsylvania (*see* Doc. No. 18 at 2), this Court does not have diversity jurisdiction under 28 U.S.C. § 1332.  Instead, as Johnson acknowledges (*see id.* at 1), the Court has federal question jurisdiction over Johnson's FDCPA claim, *see* 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Johnson's state law claims, *see id.* § 1367(a).

Congress passed the FDCPA to address the widespread use of abusive debt collection practices, which were contributing to societal ills like personal bankruptcies, marital instability, job loss, and invasions of individual privacy. *See* 15 U.S.C. § 1692(a). To accomplish this goal, § 1692k of the FDCPA imposes civil liability on debt collectors who engage in the abusive practices barred by the Act. *See id.* § 1692k(a) ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . ."). As relevant here, these abusive practices include "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is *no present right* to possession of the property claimed as collateral through an *enforceable security interest*." *Id.* § 1692f(6)(A) (emphases added).

"To state a claim under the FDCPA, a plaintiff must establish that: (1) he or she is a consumer who was harmed by violations of the FDCPA; (2) [ ] the debt arose out of a transaction entered into primarily for personal, family, or household purposes; (3) [ ] the defendant collecting the debt is a 'debt collector'[;] and (4) [ ] the defendant violated, by act or omission, a provision of the FDCPA." *Ishmael v. GM Fin. Inc.*, Case No. 2:22-cv-1095-JDW, 2022 WL 2073821, at *2 (E.D. Pa. June 9, 2022) (citing *Joensen v. Pressler & Pressler*, 731 F.3d 413, 417 (3d Cir. 2015)). Defendants argue that the second amended complaint fails to allege facts to support the fourth element—a violation of the FDCPA. The Court agrees.

Johnson contends that Defendants violated § 1692f(6)(A) when they repossessed his vehicle on behalf of Bank of America, because Bank of America did not have an "enforceable security interest" in the vehicle at the time. (Doc. No. 18 at 7). According to Johnson, the installment agreement that he entered with the dealership was unenforceable "making it

impossible for Bank of America, N.A. to obtain such as an alleged 'Assignee' in this consumer

credit transaction."  (Doc. No. 20 at 10.)  The Court disagrees.

Johnson concedes that he purchased the 2019 Jaguar F-Pace from the dealership through

a "Retail Installment Sale Contract."  (Doc. No. 18 at 2 ("On 5/28/21, Plaintiff entered a

consumer credit transaction with [the dealership] to purchase a 2019 Jaguar F Pace . . . ."); *id.* at

31–35 (copy of retail installment contract); *see also* Doc. No. 20 at 6 ("This matter [a]rises out

[of] the purchase of [a] 2019 Jaguar on Credit for personal, family, or household purposes on

5/28/21 by the Plaintiff from [the dealership]."); *id.* at 12 ("Plaintiff does not deny that he

purchased and financed the vehicle and that the transaction was governed by the terms of the

RISC [retail installment sale contract] because it is evidence that he exercised his right to

purchase the vehicle on credit governed by the terms of the RISC.").)  The installment contract

outlined the amount financed by Johnson, the annual percentage rate on the financed amount, the

number of payments to be made by Johnson, and, most importantly for our purposes, a

conspicuous warning in bold font:  **"If you do not meet your contract obligations, you may**

**lose the vehicle."**  (Doc. No. 18 at 31; *see also id.* at 34 (warning that the dealership "**may take**

**the vehicle**" and if taken, "**will sell the vehicle**").)  The installment agreement also repeatedly

states that the dealership retains a "security interest" in the Jaguar.  (*See, e.g.*, *id.* at 33.)  A plain

reading of the contract suggests that it granted the dealership—and Bank of America, as the

dealership's assignee—an enforceable security interest in the Jaguar F-Pace, which included a

right to repossession if Johnson failed to comply with his obligations under the contract.

Johnson challenges that reading, arguing that the installment agreement was invalid

because the dealership failed to "meaningful[ly] disclos[e] unconscionable terms" and

"fraudulently induced Plaintiff to indorse[ ]" the contract in violation of the Truth in Lending Act

("TILA").  (*Id.* at 3; Doc. No. 20 at 9.)  The TILA regulates 'the relationship between lenders

and consumers by requiring certain disclosures regarding loan terms and arrangements.'"

*Ishmael*, 2022 WL 2073821, at *3 (quoting *McCutcheon v. Am.'s Serv. Co.*, 560 F.3d 143, 147

(3d Cir. 2009)).  Under the Act, creditors must disclose:  "(1) the identity of the creditor; (2) the

amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the

amount financed and the finance charge, or total of payment; and (6) the number, amount, and

due dates or period of payments scheduled."  *Id.* (quoting *Krieger v. Bank of Am., N.A.*, 890 F.3d

429, 432 (3d Cir. 2018)).  Here, the installment contract discloses each category.  (*See* Doc. No.

18 at 31.)  In addition, under the TILA, "[c]reditors also must disclose definitions and

explanations of those terms and information about borrower's rights in a manner that is

reasonably understandable and noticeable to the consumer."  *Ishmael*, 2022 WL 2073821, at *3

(quoting *Krieger*, 890 F.3d at 432–33).  Johnson's opposition brief references this requirement,

but Johnson has not identified any terms, which he believes were inadequately defined or

explained.  (*See* Doc. No. 20 at 10.)[5]

    Next, Johnson argues that the dealership lacked an enforceable security interest because it

"did not acquire the status of Holder in Due Course for they did not provide Plaintiff any

valuable consideration in U.S. Funds to support Plaintiff['s] obligation to repay in U.S. Funds for

the credit that was allegedly provided to him or on his behalf to purchase the vehicle on credit."

(Doc. No. 18 at 3; Doc. No. 20 at 10–11.)  Johnson appears to be arguing that the agreement is

invalid because the purchase price of $53,056.27 did not pass through his hands before being

used to purchase the vehicle.  (*See* Doc. No. 18 at 4 ("[T]he Dealership did not loan Plaintiff any

---

[5] Although, the second amended complaint references three provisions, which Johnson argues
were not "meaningful[ly] disclos[ed]," he simultaneously concedes that each provision was included in
the installment contract, and therefore, disclosed to him.  (*See* Doc. No. 18 at ¶¶ 10–12.)

United States coins or currency (including Federal reserve notes and circulating notes of Federal

reserve banks and national banks) which are legal tender for all debts, public charges, taxes, and

dues as defined pursuant to 31 USC 5103."); *id.* ("In this consumer credit transaction to purchase

the vehicle on credit, the Dealership did not loan Plaintiff any 'money' as defined by the USS 1-

201(b)(24)."); Doc. No. 20 at 10 ("Plaintiff is fully competent to know if he had received a sum

of money from the Dealership or Bank of America, N.A. before and at the time he purchased the

2019 Jaguar on credit."); *id.* at 11 ("Plaintiff['s] 2nd Amended Complaint literally pleads in

detail of [sic] the consumer credit transaction that took place, refuting the allegations that

Plaintiff received a 'loan' in this transaction for which [sic] Defendants presumed took place.").)

The Court refuses to countenance such legal gymnastics.

Because Johnson has not sufficiently pleaded that Bank of America—and by extension,

ARS and IRS—lacked a "present right to possession of the [Jaguar] claimed as collateral through

an enforceable security interest," 15 U.S.C. § 1692f(6)(A), the Court grants Defendants' motion

and dismisses Johnson's FDCPA claim. *See Ishmael*, 2022 WL 2073821, at *3 ("Section

1692f(6) requires, among other things, 'no present right to possession of the property claimed as

collateral through an enforceable security interest.' Ms. Ishmael acknowledges that she signed

the Contract. That agreement sets forth Ishmael's monthly payment schedule and a warning that

'[i]f you do not meet your contract obligations, you may lose the vehicle.' Ms. Ishmael stopped

payments on the car loan in October 2021, so Top Notch's repossession of the Malibu was based

on the Contract." (citations omitted)). Dismissal of this claim is with prejudice, as Johnson was

previously given an opportunity to cure the deficiencies in his pleadings and failed to do so. *See,*

*e.g.*, *Warden v. Woods Servs.*, Civil Action No. 19-CV-5493, 2020 WL 1289194, at *1 (E.D. Pa.

Mar. 17, 2020) ("Because the [amended complaint] fails to cure the defects the Court previously

identified in the ADEA claim and attempts to reassert the state law claims that have already been dismissed, the [amended complaint] will be dismissed with prejudice.").

Johnson's federal claims having been dismissed, the Court declines to continue to exercise supplemental jurisdiction over Johnson's state law claims. *See* 28 U.S.C. § 1367. Accordingly, these claims are dismissed without prejudice to Johnson's right to raise them in an appropriate state court.

## IV.    CONCLUSION

Defendants' motion to dismiss is granted. Johnson's FDCPA claim is dismissed with prejudice. His state law claims are dismissed without prejudice. An appropriate order follows.